Filed 1/13/15  P. v. Cavness CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.  z

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>MICHAEL CAVNESS,<br><br>    Defendant and Appellant. | A137912<br><br>(San Francisco County<br>Super. Ct.  No. 211241) |

Defendant Michael Cavness appeals from his conviction after jury trial on several criminal counts and related enhancement allegations.  Among other things, he was sentenced to eight years for involuntary manslaughter and to a base term of 25 years to life under the Three Strikes Law for assault with a deadly weapon, upon which 13 years were added for certain enhancement allegations.  Defendant argues the trial court committed prejudicial instructional error regarding his involuntary manslaughter charge, requiring reversal.  He further contends there was insufficient evidence to support his 25 years-to-life sentence under the Three Strikes Law for assault with a deadly weapon.  We agree in both respects.  Therefore, we reverse defendant's involuntary manslaughter conviction, vacate his 25-years-to-life sentence, and remand this matter to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

### *Procedural History*

In January 2010, the San Francisco District Attorney charged defendant in an information with four criminal counts related to events that occurred on April 2, 2009.

1

Defendant was alleged to have assaulted George Michael Taylor with a deadly weapon, an iron bar (Pen. Code, § 245, subd. (a)(1)),[1] and to have personally inflicted great bodily injury (§ 12022.7, subd. (a)) in doing so (count one); to have committed the involuntary manslaughter (§ 192, subd. (b)) of his brother Edward Cavness (Edward),[2] as the proximate result of committing assault with a force likely to produce great bodily injury (§ 245, subd. (a)(1)) (count two); to have assaulted Edward with force likely to cause great bodily injury (§ 245, subd. (a)(1)) (count three); and to have been in possession of a controlled substance, cocaine base (Health & Saf. Code, § 11350, subd. (a)) (count four). The sentence enhancement allegations included that defendant had two prior "strike" convictions. This required that he be sentenced to an indeterminate life term under the "Three Strikes Law."[3] (§ 667.)

Defendant pled not guilty to all allegations and a jury trial followed. The jury found him guilty of counts one, two, and four, and guilty of a lesser offense, "simple assault" (§ 240), in count three. It also found a sentence enhancement allegation contained in count one to be true. The court subsequently held a bench trial regarding the prior conviction allegations. Among other things, it found to be true the allegations that defendant had two prior "strike" convictions.

Accordingly, in February 2013, the trial court sentenced defendant on count one, the assault of Taylor with a deadly weapon, to a base term of 25 years to life pursuant to the Three Strikes Law, with 13 additional years added under the other applicable enhancement allegations; on count two, involuntary manslaughter, to a total of eight years including a sentencing enhancement; on count three, simple assault, to one year in county jail; and on count four, to eight months in county jail. The court ordered that the

---

[1] All of our statutory references are to the Penal Code.

[2] We refer to Edward by his first name for clarity's sake, and mean no disrespect in doing so. We also recognize that the parties refer to him as "Bernard."

[3] The Three Strikes Law is codified at section 667, subdivisions (b) through (i) and Penal Code section 1170.12, subdivisions (a) through (d). (*People v. Sosa* (2013) 210 Cal.App.4th 946, 948.)

sentences run consecutively and stayed the sentences for counts three and four. Defendant filed a timely notice of appeal.

### *Evidence Presented At Trial*

At trial, it was not disputed that on the morning of April 2, 2009, defendant and Taylor smoked crack cocaine in defendant's makeshift home, located in the garage of a house he shared with his mother and other family in San Francisco, California. Defendant became agitated after Taylor refused to leave the garage and hit him in the head with an iron bar, dazing Taylor and causing him to bleed profusely. Taylor testified that defendant was standing behind him as he, Taylor, was engaged in a drug transaction with a visitor to the garage. Taylor next remembered waking up on the ground outside the garage, his head bleeding profusely. Defendant testified that he hit Taylor once with the bar in self-defense after Taylor tried to stab him with a sharp metal object. Taylor was treated at a hospital and released the next day.

It also was not disputed that a few moments after defendant hit Taylor, defendant and Edward were standing on the sidewalk outside the garage. Defendant punched Edward in the jaw, knocking him unconscious and causing him to fall backwards. Edward's head hit the sidewalk and his skull fractured, leading to his death. Defendant testified that Edward punched him first in the head. The parties disputed whether Edward did so based on different eyewitness accounts. They also disputed whether Edward also smoked crack cocaine with his brother that morning.

A medical examiner for the San Francisco Police Department testified that, along with Edward's skull fracture, there was a sutured area inside his lip and a red abrasion on his jaw that were consistent with blunt force trauma. The blow to the back of Edward's head was of a "severe" force, but the punch to the jaw was not. Alcohol and a metabolite of cocaine were found in Edward's blood. It could not be determined when he used the cocaine.

Defendant was arrested a few blocks away from his home on the afternoon of the incident. He was carrying .97 grams of cocaine base in a cigarette container. After his arrest, he called a cousin from jail. The call was recorded and played for the jury.

3

Defendant told his cousin about Taylor and Edward, "I had to break [Taylor] and [Edward] ass off." He went on to say, "What, what's up with [Taylor], man? Cause I clubbed his ass a bunch of times." He also said, "I hit [Edward] in his jaw one time. Nigger was out cold[,]" as well as "[Edward] hit me on the side [of] the head after I was fighting [Taylor]. He jump in on [Taylor's] side."

## DISCUSSION

### I. *The Court Committed Prejudicial Error In Instructing The Jury Regarding Involuntary Manslaughter.*

Defendant argues the trial court prejudicially erred when it instructed the jury about involuntary manslaughter pursuant to CALCRIM No. 581 without including the definition for "criminal negligence" contained in that standard instruction. The People concede the court's error, but argue that it was not prejudicial. We agree with defendant.

### A. *The Elements Of Involuntary Manslaughter*

Section 192 defines involuntary manslaughter as "the unlawful killing of a human being without malice" either (a) "in the commission of an unlawful act, not amounting to felony" (i.e., a misdemeanor); or (b) "in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." "Through statutory definition and judicial development, there are three types of acts that can underlie commission of involuntary manslaughter: a misdemeanor, a lawful act, or a noninherently dangerous felony." (*People v. Butler* (2010) 187 Cal.App.4th 998, 1006.) The defendant's act must proximately cause the death (*id.* at p. 1009) and be committed with criminal intent that is at least criminal negligence. (*People v. Stuart* (1956) 47 Cal.2d 167, 173-174, explained by *People v. Cox* (2000) 23 Cal.4th 665, 670-676; *People v. Butler*, *supra*, at p.1006 ["for all three types of predicate acts the required mens rea is criminal negligence"].)

4

**B.** *The Prosecution's Theory And The Trial Court's Instructions*

The prosecution argued, and the trial court instructed the jury, on two alternative predicate acts as the basis for the involuntary manslaughter charge: battery in violation of section 242 or assault with force likely to cause injury in violation of section 245, subdivision (a).[4] The court correctly instructed the jury using a modified version of CALCRIM No. 581 that the People had to prove one of those crimes, that the defendant had to have committed the crime with criminal negligence, and that the crime had to have caused the death. The instruction addressed the causation element, but failed to define or further discuss the criminal negligence mens rea requirement.

The court made this omission although "criminal negligence" is defined in the standard CALCRIM No. 581 instruction. This definition indicates that the People are required to show that a defendant acted in a "reckless" way, thereby creating a "high risk of death or great bodily injury," and that a reasonable person would have known that acting in this way would have created such a risk.[5]

This definition for "criminal negligence" is consistent with our Supreme Court's determination that "misdemeanor assault and battery *may* support a conviction of involuntary manslaughter under section 192[, subdivision] (b) if shown to be dangerous under the circumstances of their commission." (*People v. Cox* (2000) 23 Cal.4th 665,

---

[4] The court's instruction omitted the word "great" from the description of the stated assault offense. However, both the court's accompanying assault instruction and the jury's verdict form for count two referred to force likely to cause "*great* bodily injury." (Italics added.) In any event, as we will discuss, the jury did not rely on this assault allegation for its involuntary manslaughter guilty verdict.

[5] The standard definition for "criminal negligence" contained in CALCRIM No. 581 states in full: "*Criminal negligence* involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with criminal negligence when: [¶] 1. He or she acts in a reckless way that creates a high risk of death or great bodily injury; [¶] AND [¶] 2. A reasonable person would have known that acting in that way would create such a risk. [¶] In other words, a person acts with criminal negligence when the way he or she acts is so different from the way an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act."

674.) "Where involuntary manslaughter is predicated on an unlawful act constituting a misdemeanor, it must still be shown that such misdemeanor was dangerous to human life or safety under the circumstances of its commission." (*Id*. at p. 675.) A battery under section 242, which, as we will discuss, the jury relied upon as the predicate unlawful act, is a misdemeanor offense. (See, e.g., *People v. Merriman* (2014) 60 Cal.4th 1, 30.)

The court's omission was particularly significant because the parties did not discuss the "criminal negligence" element of involuntary manslaughter in closing argument. Indeed, their arguments suggested the jury could find defendant guilty of the crime without finding that defendant acted in a reckless way that created a high risk of death or great bodily injury. The prosecutor argued the jury could convict if it found "that there was a crime, a battery or an assault likely to cause great bodily injury, which was the substantial cause of [Edward's] death . . . [t]hat [defendant] hit, in an offensive touching, [Edward] in the jaw. He fell to the ground and he struck his head." Similarly, defense counsel told the jury that involuntary manslaughter required "the commission of an unlawful act that does not amount to a felony, such as a punch, which sets those wheels in motion, it resulted in the death of a human being. . . . Again, the commission of an unlawful act not amounting to a felony that results in the death of a human being, involuntary manslaughter."

Indeed, defense counsel suggested to the jury that it need not consider whether Edward's death was even foreseeable to defendant, although another requirement of "criminal negligence" is that a reasonable person *would have known* that acting in the way charged would create a high risk of death or great bodily injury. (CALCRIM No. 581.) He said defendant had been charged with involuntary manslaughter, rather than murder, because "it is *not reasonably foreseeable* that this kind of thing would happen from a punch." (Italics added.) His statement was directly inconsistent with the standard definition of "criminal negligence" contained in CALCRIM No. 581.

During its deliberations, the jury asked the court whether "simple assault," which it was instructed was a possible lesser offense for count three, was the "same" as "battery" and could therefore "cover" the unlawful act required for a finding that

6

defendant committed involuntary manslaughter. The court, after conferring with counsel and without objection from the defense, responded that "[s]imple battery is not the same as simple assault. However, simple assault can be the underlying non-felonious conduct of involuntary manslaughter *if* all the other elements have been proven. The simple assault and the other elements must be proven beyond a reasonable doubt. If you find that simple assault is the underlying unlawful act not amounting to a felony in count [two], please indicate it on the verdict form."

The jury found defendant guilty of involuntary manslaughter. It did not designate "simple assault" as the unlawful act on its verdict form. It also did not indicate whether "assault with force likely to produce great bodily injury" or "battery," both of which were on the form, was the unlawful act. However, in count three, it found defendant was not guilty of "assault with force likely to cause great bodily injury" but guilty of the lesser included offense of "simple assault." The only logical conclusion that can be drawn from these verdicts is that the jury relied on battery as the predicate unlawful act in finding defendant guilty of involuntary manslaughter.

## C. *Analysis*

Defendant asserts we must analyze the trial court's error pursuant to the federal standard for prejudice, which requires that we determine whether or not the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The People contend we should do so under the state standard, which requires that we determine whether or not it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant is correct.

As this court stated in *People v. Hunter*, under the Fifth Amendment of the federal Constitution, "the prosecution must prove every element of a criminal offense beyond a reasonable doubt [citation], and the Sixth Amendment requires that determination to be made by the jury, not the court [citation]. Consequently, an instruction lightening the prosecution's burden of proof violates the accused's right to a jury trial. [Citations.]" (*People v. Hunter* (2011) 202 Cal.App.4th 261, 276.) These federal constitutional rights

7

are implicated here. Therefore, we must apply the federal prejudice standard and determine whether or not the court's instructional error was harmless beyond a reasonable doubt. (*Id*. at p. 278, citing *Chapman v. California*, *supra*, 386 U.S. at p. 24.)

But the difference is of no moment in this case because the court's error was prejudicial under either standard. Defendant almost certainly would have received a more favorable verdict regarding count two, involuntary manslaughter, if the court had instructed the jury on the definition of "criminal negligence." Regarding count three, the jury found defendant was *not* guilty of "assault with force likely to produce great bodily injury" and guilty only of the lesser offense of "simple assault." The jury thus declined to find that defendant's act of punching his brother involved force "likely to produce great bodily injury." This element of the more serious assault charge is very similar to the "criminal negligence" requirement that the relevant act create "a high risk of death or great bodily injury." (CALCRIM No. 581.) Counts two and three were based on the same act—defendant's attack of Edward.[6] It would not be rational for a jury to conclude that defendant did *not* act with force *likely* to produce great bodily injury, but did act recklessly so as to create a *high risk of death or* great bodily injury.

Nor did the jury's apparent finding that defendant committed battery affect our analysis. Regarding battery, the court instructed that the People were required to prove that defendant "willfully and unlawfully touched Edward Cavness in a harmful or offensive manner" and "did not act in self-defense." Nothing in this instruction required the jury to find defendant acted with force likely to produce great bodily injury, much less that his act created a high risk of death or great bodily injury.

---

[6] The People argue on appeal that the trial court's instructional error lacked prejudice because of the overwhelming evidence of defendant's guilt, including one witness's testimony that she saw defendant continue his assault on Edward after Edward fell. Defendant contends this evidence was discredited. It makes no difference to our analysis, however, because the jury considered this evidence in determining defendant's guilt for both counts two and three and still declined to find that defendant acted with force likely to produce great bodily injury.

In short, the court's failure to instruct the jury regarding the definition of "criminal negligence" was prejudicial:  it relieved the prosecution of having to prove every element of the offense beyond a reasonable doubt and it is more than reasonably probable that, correctly instructed, the jury would have issued a verdict more favorable to defendant. Therefore, we reverse defendant's involuntary manslaughter conviction and remand this matter to the trial court for further proceedings consistent with this opinion.

## II.  *Defendant's Three Strikes Conviction*

Defendant also argues there was insufficient evidence to support the trial court's finding at its bench trial that he had suffered two prior "strike" convictions.  Therefore, he contends, the court's imposition of his 25-years-to-life sentence for assaulting Taylor with a deadly weapon pursuant to the Three Strikes Law was in error and should be vacated.  We agree, and remand this matter to the trial court for further proceedings consistent with this opinion.

### A.  *The Proceedings Below*

The People alleged in their information that defendant was previously convicted of two specific, serious felonies, each of which constituted a strike.  At the bench trial, the People submitted documentary evidence in support of these allegations and the court found them to be true.  Defendant challenges the sufficiency of the evidence regarding one of them.[7]

Specifically, the People alleged in their information that defendant was "convicted of the crime of ASSAULT WITH FORCE LIKELY TO CAUSE GREAT BODILY INJURY, violating section 245[, subdivision ](a)(1) of the Penal Code, a Felony, on or about the 24th day of May, 1994, in the Superior Court of California, County of San Francisco."  At the bench trial, the People submitted documents into evidence to prove this allegation.  These included reporter's transcripts of hearings in San Francisco Superior Court on May 3, 1994, and May 24, 1994.  They show that defendant, in the

---

[7]  Defendant does not challenge the trial court's finding that defendant was convicted in 1999 of the crime of attempting to dissuade a witness (§ 136.1, subd. (a)(2)), as alleged by the People in their information.

same court proceeding, pled to, and was found guilty of, two separate charges in two separate cases pursuant to a negotiated disposition.

That is, on May 3, 1994, defendant pled to, and was found guilty of, assault with force likely to produce great bodily injury in case number 153902. The information filed against him in that case, also submitted into evidence at the bench trial, indicates this assault was against Kathryn Schneider. The record does not contain further information about the offense. Although the relevant count recited in the information in case number 153902 includes an enhancement allegation that defendant personally inflicted great bodily injury on Schneider, this allegation was dismissed as part of the negotiated disposition.

Also on May 3, 1994, defendant pled guilty to assault with a deadly weapon, a baseball bat, in case number 153932. The information filed against him in that case, also submitted into evidence at the bench trial, includes the allegation that he personally committed an assault with the bat upon Charles Cavness. The record does not contain further information about this offense either.

At the bench trial regarding defendant's prior convictions, neither party presented much argument. The prosecutor declined to make any detailed argument because "the exhibits speaks [*sic*] for themselves." He made no comment regarding the May 1994 proceedings other than in the course of addressing allegations of prior felonies with state prison terms that were made pursuant to Penal Code section 666.5, subdivision (b) (regarding determinate sentencing). He stated then that the documents showed "prison commitments as alleged for the 245 [,subdivision] (a)(1) as one strike; and 245 [,subdivision] (a)(1), nonstrike[.]" Defense counsel submitted on the matter without making any argument.

The trial court found that the People's Three Strikes allegation that defendant had been convicted of "assault with force likely to cause great bodily injury . . . on or about the 24th day of May 1994" to be true, without further elaboration. Neither the information, nor the court's finding, made any mention of the other conviction defendant suffered in May 1994, for assault of Charles Cavness with a deadly weapon.

10

**B.** *Analysis*

We review the trial court's findings to determine whether there is substantial evidence that the allegation has been proved beyond a reasonable doubt. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1065, 1067 (*Delgado*).) In other words, "we examine the record in the light most favorable to the judgment . . . [to] determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Id*. at p. 1067.)

As defendant points out, in order for the court to sentence him pursuant to the Three Strikes Law under the circumstances of his case, it must be "pled and proved" that any prior strike conviction was for a "serious" or "violent" felony. (§ 667, subds. (c), (e)(2); § 1170.12, subd. (a).)

Defendant contends that his May 1994 conviction for "assault with force likely to produce great bodily injury" against Schneider in case number 153902 was neither a "serious" nor "violent" felony. This is correct. A "serious" or "violent" felony, when a weaponless assault against a non-accomplice is involved, must involve evidence that the defendant in fact personally inflicted great bodily injury on the victim. (§ 1192.7, subd. (c)(8); § 667.5, subd. (c)(8).) "[A]ssault merely by *means likely to produce* [great bodily injury], without the additional element of personal infliction, is not included in the list of serious felonies." (*Delgado*, *supra*, 43 Cal.4th at p. 1065.) Nothing in the record indicates that defendant's assault on Schneider involved his actual personal infliction of such an injury. To the contrary, an allegation that he did so accompanied this assault charge in case number 153902 and was dismissed as part of the negotiated disposition of the case.

A dismissed allegation alone is insufficient evidence that defendant's assault of Schneider involved the infliction of the requisite personal injury. "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.] In such a case, if the statute under which the prior conviction occurred could be violated in a way that does

not qualify for the alleged enhancement, the evidence is thus insufficient, and the People have failed in their burden." (*Delgado*, *supra*, 43 Cal.4th at p. 1066.) Such is the case here.

On appeal, the People do not argue that defendant's conviction for assault with force likely to produce great bodily injury against Schneider in May 1994 should count as a prior strike conviction. Instead, they contend we should construe the trial court's finding as that defendant suffered a prior conviction for assault *with a deadly weapon* against Charles Cavness in case number 153932. Such an assault *is* a serious felony. (§ 1192.7, subd. (c)(31); *Delgado*, *supra*, 43 Cal.4th at p. 1065.)

The People's argument is untenable for three reasons. First, the People did not *plead* that defendant was convicted in May 1994 of assault with a deadly weapon in case number 153932, nor did they seek to amend the information at any time. They were required by statute to plead the prior strike conviction. (§ 667, subds. (c), (e)(2); § 1170.12, subds. (a), (d); *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332.)

Second, the People never put the matter at issue. Their information does not refer to defendant's conviction for assault with a deadly weapon as a prior strike conviction. At the hearing, the People did not argue that it was the basis for one. It is true that, as the People contend, the prosecutor submitted evidence at the bench trial which showed that defendant was convicted in 1994 for assault with a deadly weapon. However, the prosecutor never made a direct reference to that conviction. He made what may have been an oblique reference to it, as well as to defendant's simultaneous conviction for assault with force likely to cause great bodily injury, in discussing the charges relevant to the People's determinate sentencing enhancement allegations. However, he stated only that defendant had previously been convicted of a strike and non-strike offense pursuant to section 245, subdivision (a)(1). He did not identify which of defendant's two May 1994 convictions constituted a strike conviction. This was an important omission because in 1994, the crimes of assault with force likely to produce great bodily injury and assault with a deadly weapon were both contained in that same subdivision, section 245,

12

subdivision (a)(1).[8] (Stats. 1993, ch. 369, § 1.) Thus, the prosecutor's oblique reference was too ambiguous to clarify the People's allegations or put forward the assault with a deadly weapon conviction as the basis for the court finding a prior strike conviction.

Third, the trial court did not make any mention of, or finding regarding, defendant's conviction for assault with a deadly weapon. To the contrary, it specifically ruled that defendant's 1994 conviction for assault with force likely to produce great bodily injury constituted a prior strike conviction. As we have discussed, this was incorrect absent evidence that defendant in fact inflicted such an injury on the victim.

The People also contend that the defense understood the People were relying on defendant's conviction for assault with a deadly weapon against Charles for the second strike conviction because, shortly after the bench trial, the defense argued in its sentencing memorandum that this particular conviction should be stricken and not be a basis for a Three Strikes Law sentence. Given the evidence submitted by the prosecution at the bench trial, it is not surprising that the defense would nonetheless argue that this conviction should not be the basis for a Three Strikes Law sentence. Regardless, it is of no consequence in light of the fact that at the bench trial, the People did not argue, nor did the trial court find, that defendant's conviction for assault with a deadly weapon against Charles was the basis for his second strike.

In short, the trial court found as defendant's second strike conviction that he had previously been convicted of assault with force likely to produce great bodily injury in May 1994. The only such conviction was for defendant's assault of Schneider in case number 153902. Nothing in the record regarding that proceeding indicates that defendant's assault of Schneider included his infliction of great bodily injury upon her. In the absence of any such evidence, the People did not meet their burden of proving this

---

[8] Assault with a deadly weapon remains in section 245, subdivision (a)(1), but assault with force likely to produce great bodily injury is now contained in section 245, subdivision (a)(4).

13

conviction constituted a second strike. We therefore vacate defendant's sentence and remand this matter to the trial court for further proceedings consistent with this opinion.[9]

In light of our conclusions, we do not address the remainder of the parties' arguments, including defendants' contention that the People did not present evidence sufficient to meet certain other elements of involuntary manslaughter.

## DISPOSITION

Defendant's conviction for involuntary manslaughter is reversed and his 25-years-to-life sentence for assault of Taylor with a deadly weapon is vacated. This matter is remanded to the trial court for further proceedings consistent with this opinion.

 

STEWART, J.

We concur.

 

KLINE, P.J.

 

RICHMAN, J.

---

[9] The parties do not address what is permissible upon remand. We make no determination regarding it. We only note that the People generally may retry strike conviction allegations found on appeal to be unsupported by sufficient evidence without double jeopardy acting as a bar. (*People v. Sotello* (2002) 94 Cal.App.4th 1349, 1354-1357.)

14